UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUN 2 1 2016

Lawrence Tomscha *et al.*,

            Plaintiffs,

–v–

General Services Administration,

            Defendant.

15-CV-7326 (AJN)

MEMORANDUM AND ORDER

ALISON J. NATHAN, District Judge:

    Plaintiffs Lawrence Tomscha, Latanya Harrison, Peter Davis, Jonathan Phillips, Crystal Cuffee, and Priscilla Rosario initiated this action on September 16, 2015. Dkt. No. 1. Defendant General Services Administration filed its motion to dismiss on December 7, 2015. Dkt. No. 9. For the reasons articulated below, that motion is granted.

I.    BACKGROUND

    The General Services Administration ("GSA") currently occupies several floors of office space at 26 Federal Plaza in Manhattan. Comp. ¶ 66. In July 2012, the GSA entered into an agreement to lease six levels of One World Trade Center, constructed near the former location of the World Trade Center Towers destroyed on September 11, 2011. *Id.* ¶ 69, 71. Plaintiffs, who are employees of the GSA, *id.* ¶ 65, have been informed that they will move from 26 Federal Plaza to One World Trade Center in the near future. *Id.* ¶¶ 24, 36, 46, 55.

    This suit is brought under the Administrative Procedure Act, 5 U.S.C. § 501 *et seq.* ("APA") and challenges the GSA's lease of space at One World Trade Center. Comp. ¶¶ 105-108. First, Plaintiffs argue that the GSA failed to comply with 41 U.S.C. § 3301 (formerly 41 U.S.C. § 253(a)), which requires the federal government to use competitive bidding procedures

1

before entering into a lease. Comp. ¶¶ 89-94. Next, Plaintiffs argue that the GSA failed to comply with 40 U.S.C. § 585(a)(2), which requires that the terms of any lease entered into by the GSA be "in the interest of the Federal Government and necessary for the accommodation of the federal agency. Comp. ¶¶ 99-102. As a result of these alleged statutory violations, Plaintiffs seek declaratory relief and an injunction prohibiting the GSA from entering into the One World Trade Center lease. Comp. at 14.

Based on these allegations, the GSA has moved to dismiss Plaintiff's lawsuit for lack of constitutional standing, prudential standing, and subject-matter jurisdiction. Dkt. No. 9. The Court will first address constitutional standing, then subject-matter jurisdiction, and then the "zone of interests" analysis previously called prudential standing.

## II.   CONSTITUTIONAL STANDING

"[T]he irreducible constitutional minimum of standing" consists of three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks, citations, alterations, and footnotes omitted).

In support of their lawsuit, Plaintiffs allege three categories of injury to establish constitutional standing. First, Plaintiffs cite their fears that One World Trade Center will be the target of future terrorist attacks. Comp. ¶¶ 12, 27, 49, 70. At least some Plaintiffs were present in downtown Manhattan on September 11, 2001, a factor that they cite as exacerbating this fear.

2

*Id.* ¶¶ 9, 11, 54, 56-58.  Second, Plaintiffs argue that the lease, which is alleged to cost $351 million, is unnecessarily expensive and constitutes a waste of taxpayer funds.  *Id.* ¶¶ 75, 78, 86.  Finally, Plaintiffs argue that the new facilities at One World Trade Center lack private workspaces, offer fewer amenities for employees than 26 Federal Plaza, and would exacerbate the vertigo and fear of heights of one plaintiff.  *Id.* ¶¶ 18, 26, 29, 47-48, 61.  The Court will consider each alleged basis for standing in turn.

### A. Plaintiffs' Fear of Future Terrorist Attacks Is Insufficient to Establish Standing

Plaintiffs first argue that they have an injury sufficient to establish constitutional standing based on their fears that their new workplace, One World Trade Center, will be the target of future terrorist attacks.  Comp. ¶¶ 12, 27, 49, 70.  The GSA argues that such fears are "conjectural and do not present the real and immediate threat of future injury necessary to establish Article III standing."  Dkt. No. 10 ("Br.") at 9.  Plaintiffs respond that any move to One World Trade Center would "force[ them] to spend significant portions of their waking hours in a place which instills significant fear due to the potential for terrorist attack."  Dkt. No. 16 ("Opp. Br.") at 7.  In essence, Plaintiffs argue that while an actual terrorist attack may not be imminent, their fears and anxiety about that possibility are sufficiently "concrete and particularized" and "actual or imminent" to establish constitutional standing.  *Lujan*, 504 U.S. at 560.

The Supreme Court has addressed this concept of "fear-based standing," *Hedges v. Obama*, 724 F.3d 170, 195 (2d Cir. 2013), numerous times.  The concept had its origin in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), where the Court observed that "[t]he reasonableness of [a] fear is dependent upon the likelihood of a recurrence of the allegedly unlawful conduct.  It is the *reality* of the threat . . . that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions."  *Id.* at 107 n.8.  More recently, in *Clapper v. Amnesty Int'l USA*, 133 S. Ct.

3

1138, 1150-51 (2013), the Supreme Court explained that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 1151. The reason for this, the Court explained, was to prevent "an enterprising plaintiff" from "making an expenditure based on a nonparanoid fear," thereby "repackage[ing]" an insufficient injury and creating a sufficient injury. *Id.*

These cases stand for the proposition that a plaintiff may not evade the "actual or imminent" injury requirement of Article III by citing subjective fears unrelated to the objective probability of harm. In other words, if the harms suffered are not objectively actual or imminent, a plaintiff cannot argue that his (disproportionate) subjective assessment of the situation creates an actual or imminent harm, whether it be in the form of emotional distress or preventive cost. However, a plaintiff's "fears may support standing when the threat creating the fear is sufficiently imminent." *Hedges*, 724 F.3d at 195. Despite this general understanding, the question remains of precisely "*how* imminent a threat must be in order to support standing" under this theory, and as the Second Circuit has noted, "[t]he Supreme Court's jurisprudence" on this issue "has been less than clear." *Id.* (emphasis added). For example, in *Clapper*, the Supreme Court rejected the idea that the threat of a future harm need only be an "objectively reasonable likelihood" to establish fear-based standing and instead concluded that such harm must be "certainly impending." *Clapper*, 133 S. Ct. at 1143, 1147. However, the *Clapper* Court also recognized that it had previously "found standing based on a '*substantial risk*' that the harm will occur." *Id.* at 1150 n.5 (emphasis added). Despite some tension, the Court reads this case as requiring, at a minimum, that a plaintiff's subjective fear be "reasonable[]," *Lyons*, 461 U.S. at 107 n.8, in relationship to a "substantial" objective risk. *Clapper*, 133 S. Ct. at 1150 n.5.

4

Measured against this standard, Plaintiffs' genuine fears of a future terrorist attack at One World Trade Center are insufficient to establish constitutional standing. Because Plaintiffs "bear[] the burden of establishing standing," *Lujan*, 504 U.S. at 561, they must "plead[] . . . concrete facts showing . . . [a] substantial risk of harm" to justify their fears. *Clapper*, 133 S. Ct. at 1150 n.5. Plaintiffs allege "[u]pon information and belief" that "terrorists . . . see [One World Trade Center] as a symbol of the United States [*sic*] economic interests," Comp. ¶ 70, and argue that it is the target of unspecified "threats made by various international terrorist organizations." Dkt. No. 16 at 6. However, Plaintiffs put forth only one "concrete fact[]," *Clapper*, 133 S. Ct. at 1150 n.5, in their opposition brief support of the notion that One World Trade Center will be a target for future terrorist attacks: That One World Trade Center "replaced what was a target for terrorists on two separate occasions" in the past (presumably referring to the 1993 bombing and the September 11, 2011 attacks). Dkt. No. 16 at 6. "Of course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). However, the fact that the World Trade Center complex was targeted in two very different terrorist attacks over the past twenty-three years, without more, is insufficient to demonstrate a "real and immediate threat," *id.*, that is "certainly impending," *Clapper*, 133 S. Ct. at 1150, or even a "substantial risk," *id.* at 1150 n.5, that One World Trade Center *specifically* will be the target of any future, let alone imminent, terrorist attack.

The Court does not doubt that Plaintiffs have genuine fears about the possibility that One World Trade Center could be targeted by a terrorist attack in the future. However, Plaintiffs' allegations on the likelihood of this threat do not meet their burden of demonstrating that there is a "substantial risk" of such an attack, or that an attack is "certainly impending." *Clapper*, 133 S.

Ct. at 1150 & n.5. Because "the *reality* of the threat . . . is relevant to the standing inquiry, not the plaintiff[s'] subjective apprehensions," *Lyons*, 461 U.S. at 107 n.8, and Plaintiffs have not alleged that the threat of a future terrorist attack at One World Trade Center is "sufficiently imminent," *Hedges*, 724 F.3d at 195, Plaintiffs' subjective fears are not objectively reasonable and do not establish constitutional standing. *Lyons*, 461 U.S. at 107 n.8.

### B. Plaintiffs' Taxpayer Status Is Insufficient to Establish Standing

Plaintiffs next argue that the GSA's lease of space at One World Trade Center harms them as taxpayers because the lease, alleged to cost $351 million, is unnecessarily expensive. Comp. ¶¶ 75, 78, 86. "As a general matter, the interest of a federal taxpayer in seeing that Treasury funds are spent in accordance with [federal law] does not give rise to the kind of redressable 'personal injury' required for Article III standing . . . . [b]ecause the interests of the taxpayer are, in essence, the interests of the public at large." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 599-600 (2007). The Supreme Court has, however, recognized one "narrow exception" for taxpayers who challenge violations of the Establishment Clause. *Id.* at 593, 602. Plaintiffs recognize that "presently the only exception which permits taxpayer standing applies to government spending in violation of the Establishment Clause," and do not argue, nor could they, their its challenge fits these criteria. Opp. Br. at 8. Instead, Plaintiffs argue that taxpayer standing "should be expanded to provide standing for government employees who seek to root out government waste." *Id.* Because Plaintiffs' claim does not fit the "narrow exception" to the general prohibition of taxpayer standing, *Hein*, 551 U.S. at 593, 602, and "[t]his Court does not have the discretion to ignore Supreme Court precedent," *In re CBI Holding Co.*, 529 F.3d 432, 469 (2d Cir. 2008), Plaintiffs lack constitutional standing to pursue their claim based on their status as taxpayers.

6

### C. Plaintiffs' Workplace Injuries Are Sufficient to Establish Standing

Plaintiffs' final standing argument is that they will suffer an imminent "concrete and particularized" injury once they change offices because the work spaces at One World Trade Center are inferior to their current workspaces at 26 Federal Plaza. *See* Comp. ¶¶ 18, 29, 47-48, 61. The GSA argues that such "minimal . . . harms . . . fail to allege a legally cognizable interests." Br. at 10.

Although the argument has a strong intuitive appeal, the cases the GSA cites for this position demonstrate that its argument conflates the standing analysis with failure to state a claim on the merits. For example, in *Diesel v. Town of Lewisboro*, 232 F.3d 92 (2d Cir. 2000), the Second Circuit held that the plaintiff "failed to prove that he suffered a cognizable constitutional injury" because he had "no constitutional right" under the Equal Protection Clause to the type of treatment he sought. *Id.* at 103-04. This case did not involve a standing question; instead, the Second Circuit found that the plaintiff's Equal Protection claim "fail as a matter of law" on the merits. *Id.* at 103; *see also id.* at 104 ("In short, this equal protection claim alleges no differential treatment; instead, it alleges that Diesel was deprived of a privileged status to which he had no constitutional entitlement."). Although, as the GSA notes, the Second Circuit used the term "constitutional injury" in that case, Dkt. No. 18 ("Rep. Br.") at 5 (citing *Diesel*, 232 F.3d at 104), the context makes clear that the Second Circuit was discussing the bounds of cognizable constitutional *claims*, not whether the plaintiff's injury was sufficiently "actual or imminent" and "concrete and particularized" to establish standing. *Lujan*, 504 U.S. at 560. The same is true of the other two cases the GSA cites on this point. *See Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999) (discussing whether the plaintiff had adequately pleaded a First Amendment retaliation claim based on "the alleged acts of retaliation"); *Leon v. Johnson*, 96 F. Supp. 2d 244,

7

247-48 (W.D.N.Y. 2000) (finding that the plaintiff's denial of medication failed to meet the "deliberate indifference" standard for a § 1983 claim).

The Supreme Court has recognized that "[a]esthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society" and that government action affecting those interests may constitute an injury so long as "the party seeking review [is] himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734-35, (1972). Plaintiffs have been told that they will move from 26 Federal Plaza to One World Trade Center, *see* Comp. ¶¶ 24, 36, 46, 66, and that One World Trade Center, unlike 26 Federal Plaza, will not have individual work spaces or cubicles for employees, but instead will have a smaller communal workspace. *Id.* ¶¶ 18-19, 28-29, 39-40, 47, 59-61. They further allege that One World Trade Center, unlike 26 Federal Plaza, lacks a gym or cafeteria. *Id.* ¶¶ 48, 61. The Court concludes below that these injuries are not within the "zone of interests" that the statutes invoked are intended to protect. However, the denial of the enumerated workplace amenities, which implicate the productivity and comfort of the workplace, is arguably similar to an "[a]esthetic" injury in some ways, *Morton*, 405 U.S. at 734, and the Court will therefore presume that it is sufficiently "concrete and particularized" and "imminent" to establish constitutional standing. *Lujan*, 504 U.S. at 560.

### III.  SUBJECT MATTER JURISDICTION

Because the Court presumes that the Plaintiffs have constitutional standing, the Court will consider whether it can exercise subject-matter jurisdiction over Plaintiffs' claims. Plaintiffs request relief under 28 U.S.C. § 2201, the Declaratory Judgment Act, arguing that Defendant violated 40 U.S.C. § 585 and 41 U.S.C. § 3301. Comp. ¶¶ 89-94, 99-104. The Declaratory Judgment Act, however, does not provide an independent private right of action. *See*

*WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.*, 851 F. Supp. 2d 494, 503 (S.D.N.Y. 2011); *Zheng v. Reno*, 166 F. Supp. 2d 875, 878 (S.D.N.Y. 2001) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950)). Instead, the private right of action that Plaintiffs invoke is the Administrative Procedure Act, 5 U.S.C. § 501 *et seq*. (APA). Comp. ¶¶ 105-108.

### A. Legal Standard

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Judicial review under the APA is not available, however, if "agency action is committed to agency discretion by law." *Id.* § 701(a)(2). Section 701(a)(2) bars judicial review of claims only if "there is no law to apply," *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977), such that there is "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). As the Supreme Court explained, "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" *Id.* To demonstrate that a claim is not barred by § 701(a)(2), a plaintiff "must specify some statute or regulation that would limit the [agency's] discretion in th[e] matter." *Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003). This analysis requires "careful examination of the statute on which the claim of agency illegality is based." *Webster v. Doe*, 486 U.S. 592, 600 (1988). Because the APA "waives the federal government's sovereign immunity," the Court cannot exercise subject-matter jurisdiction over a claim if "§ 701(a)(2) . . . precludes judicial review of [the relevant] decision under the APA." *Lunney*, 319 F.3d at 558; *Webster*, 486 U.S. at 601.

### B. Application

The GSA argues that the Court lacks subject matter jurisdiction over Plaintiffs' APA claim alleging violation of 40 U.S.C. § 585(a)(2). Br. at 16. That statute provides, in pertinent part,[1] that "[a] lease agreement under this subsection shall be on terms the Administrator considers to be in the interest of the Federal Government and necessary for the accommodation of the federal agency." § 585(a)(2). Because the statute gives the GSA Administrator the authority to determine what is "in the interest of the Federal Government and necessary for the accommodation of the federal agency," § 585(a)(2), the GSA argues that the Administrator's decision regarding the terms of a lease is "committed to agency discretion by law" and not reviewable under the APA. Br. at 16. Countering this argument, Plaintiffs purport to cite a number of cases "specify[ing] some statute or regulation that would limit the [agency's] discretion in th[e] matter." *Lunney*, 319 F.3d at 558. None of the cases Plaintiffs cite, however, limit the GSA's discretion in a relevant way.

Plaintiffs first cite a number of cases which do not involve § 585(a)(2), but instead involve challenges made by losing bidders under a variety of federal procurement statutes and regulations. Opp. Br. at 12; *see also Springfield Parcel C, LLC v. United States*, 124 Fed. Cl. 163, 182-83, 185 (2015) (challenging the award of a lease under a variety of federal regulations and 41 U.S.C. § 3307(a)(2), but not § 585(a)(2)); *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1373-76 (Fed. Cir. 2009) (challenging the Air Force's award of a contract for the long-term maintenance of its aircraft under regulations unrelated to § 585(a)(2)); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1327, 1329 (Fed. Cir. 2001) (challenging the award of a maintenance contract as violating 48 C.F.R. § 9.104-1(d), not

---

[1] Plaintiffs do not allege that the challenged lease violated the 20-year limitation contained in 585(a)(2).

10

§ 585(a)(2)). These distinctions are important because determining whether judicial review is available under the APA requires "careful examination of the statute *on which the claim of agency illegality is based.*" *Webster*, 486 U.S. at 600 (emphasis added). While the cases Plaintiffs cite invoke a number of regulations governing various procurement statutes, those regulations govern *who* is awarded a lease or contract under the competitive bidding procedures established in 41 U.S.C. § 3301 *et seq.* These cases do not cite, and Plaintiffs do not otherwise identify, any regulations that "limit the [GSA's] discretion" in determining the *terms* of a lease under § 585(a)(2). *Lunney*, 319 F.3d at 558.

Next, Plaintiffs cite authority on when an agency's decision can be considered arbitrary and capricious. Opp. Br. at 12. For example, Plaintiffs rely heavily on the standard articulated in *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983). *See* Opp. Br. at 12. Importantly, however, this standard was articulated in a case challenging an agency's failure to satisfy the requirements of § 553 of the APA. *State Farm*, 463 U.S. at 41. That provision, not at issue here, requires an agency to consider "the relevant matter presented" by "interested persons" and "incorporate in the rules adopted a concise general statement of their basis and purpose" when it engages in rulemaking. 5 U.S.C. § 553(c). Unlike § 553, 40 U.S.C. § 585(a)(2) and its related regulations do not mandate that the GSA Administrator look to certain data or follow a certain process in determining the terms of a lease. As a result, the *State Farm* standard requiring an agency to look to certain data and explain its decisions it the rulemaking context is not applicable to judicial review of the GSA's decisions under § 585(a)(2).

Because none of the statutes, regulations,[2] or cases that Plaintiffs cite provide guidance on what lease terms the GSA Administrator should "consider to be in the interest of the Federal

---

[2] The Court notes that there are a limited number of regulations on 40 U.S.C. § 585 not cited by Plaintiff. These regulations do not provide guidance for evaluating whether the "terms [of the lease are] . . . in the interest of

11

Government and necessary for the accommodation of the federal agency," 40 U.S.C. § 585(a)(2), Plaintiffs have not discharged their "burden of establishing the 'law to apply'" by "specify[ing] some statute or regulation that would limit the [GSA's] discretion" in crafting the terms of a lease. *Lunney*, 319 F.3d at 558-59.  At least one other court reached the same conclusion. *See Am. Fed'n of Gov't Emps., Local 2764 v. Gen. Servs. Admin.*, 348 F. Supp. 1200, 1201 (W.D. Pa. 1972).  In fact, Plaintiffs have not identified, and the Court has been unable to locate, any APA claim based on a violation of 40 U.S.C. § 585.  For all these reasons, the Court concludes there is "no meaningful standard against which to judge the [GSA's] exercise of discretion," *Heckler*, 470 U.S. at 830, in structuring lease "terms the Administrator considers to be in the interest of the Federal Government and necessary for the accommodation of the federal agency." § 585(a)(2).

As a result, "§ 701(a)(2) . . . precludes judicial review of [the GSA's] decision[] under the APA." *Webster*, 486 U.S. at 601.  Because Plaintiffs' § 585(a)(2) allegations are not subject to judicial review under the APA, they are not justiciable under 28 U.S.C. § 1361, codifying the common law writ of mandamus.  *See Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1182 (2d Cir. 1978) (noting that "matters . . . within [an agency's] discretion . . . are not reviewable under the Administrative Procedure Act or 28 U.S.C. § 1361).  As a result, all of Plaintiffs' claims based on the violation of § 585(a)(2) must be dismissed.  However, there are no obstacles to the Court's exercise of subject-matter jurisdiction over Plaintiffs' 41 U.S.C. § 3301 claim challenging the GSA's failure to use "competitive procedures" in procuring its lease for One World Trade Center.  Comp. ¶ 94.

---

the Federal Government and necessary for the accommodation of the federal agency," § 585(a)(2), and instead involve other aspects of the statute. *See, e.g.*, 41 C.F.R. § 102-73.60; 41 C.F.R. § 102-73.235; 48 C.F.R. § 570.103.

### IV. "ZONE OF INTERESTS"

Because Plaintiffs satisfy the standing and subject-matter jurisdiction requirements with respect to their 41 U.S.C. § 3301 claim, the Court will consider whether Plaintiffs are within the "zone of interests" protected by this statute. As limited above, Plaintiffs' constitutional standing is predicated on One World Trade Center being a less desirable workplace for GSA employees. Defendant argues that these injuries are unrelated to the purpose of 41 U.S.C. § 3301 and are thus outside of the "zone of interests" protected by the statute. Br. at 11-15.

As recently as 2012, the Supreme Court referred to the "zone of interests" analysis as a matter of "prudential standing." *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012). Since then, however, the Supreme Court has clarified that "[w]hether a plaintiff comes within the zone of interests is an issue that requires [the Court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014) (internal quotation marks omitted). Under *Lexmark*, then, determining "whether a claim satisfies these requirements goes not to the court's jurisdiction—that is, '*power*'—to adjudicate a case, but instead to whether the plaintiff has adequately pled a claim." *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 201 (2d Cir. 2014) (quoting *Lexmark*, 134 S. Ct. at 1387 n.4).

In order to bring suit under the APA, a plaintiff must allege that his interest is "arguably within the zone of interests to be protected or regulated by the statute that he says was violated." *Patchak*, 132 S. Ct. at 2210 (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)) (internal quotation marks omitted). This test "is not meant to be especially demanding" and "forecloses suit only when a plaintiff's interests are so marginally related to or

inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987)) (internal quotation marks omitted). The GSA argues that any failure to comply with the competitive bidding requirements of 41 U.S.C. § 3301 has little to do with "Plaintiffs' workplace-related interests" and thus fails the "zone of interests" test. Br. at 13. In support of this argument, the GSA notes that the statute, passed as part of the Deficit Reduction Act of 1984, has the stated goal of "provid[ing] for . . . deficit reduction." *Id.* (quoting Pub. L. No. 98-369, 98 Stat. 494). Countering this contention, Plaintiffs point to "Qualification Requirements" in a related statute which provide for "quality assurance" procedures. Opp. Br. at 9 (quoting 41 U.S.C. § 3311(a)). Plaintiff argues that "quality assurance" requirements "demonstrate[] a desire by Congress to ensure that the quality of space procured meets specific standards," including standards for workplace productivity and aesthetic. Opp. Br. at 9-10.

Plaintiffs' argument seriously misconstrues the "Qualification Requirements" under 41 U.S.C. § 3311(a). As the regulations explain, "[q]ualification . . . is the process by which *products* are obtained from manufacturers or distributors [and] examined and tested for compliance with specification requirements, or manufacturers or potential offerors[] are provided an opportunity to demonstrate their abilities to meet the standards specified for qualification." 48 C.F.R. § 9.203(a) (emphasis added). Furthermore, qualifications requirements only apply if an agency has "establish[ed] a qualification requirement" by "[s]tating the necessity for establishing the qualification requirement" and "[s]pecifying all requirements that a potential offeror (or its product) must satisfy in order to become qualified." 48 C.F.R. § 9.202(a)(1)(i), (iii). Because qualification requirements apply only to products, the statute has no relevance to the lease agreement here. Even if leases were subject to qualification requirements, there is no indication

that the GSA has established any requirement that would be relevant here. As a result, the "Qualification Requirements" in 41 U.S.C. § 3311 do not establish that Plaintiffs' productivity and morale interests are within the "zone of interests" of 41 U.S.C. § 3301.

Plaintiffs do not make any other argument that their claims fall within the "zone of interests" of 41 U.S.C. § 3301. However, the Court notes that while "disappointed bidders" are within the zone of interests of 41 U.S.C. § 3301 and other federal procurement statutes, *see B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 715, 720-21 (2d Cir. 1983), courts have declined to reach the same conclusion about parties other than disappointed bidders. *See, e.g., Rubber Millers, Inc. v. United States*, 596 F. Supp. 210, 213 (D.D.C. 1984) (a "disappointed potential subcontractor" was not within zone of interests of procurement statutes); *see also Courtney v. Smith*, 297 F.3d 455, 461, 466-67 (6th Cir. 2002) (government employees' "interest in retaining . . . government jobs" was not within the zone of interests of procurement statutes).

For these reasons, the Court finds that Plaintiffs' interests in a productive and morale-boosting work environment are not "arguably within the zone of interests to be protected or regulated by" 41 U.S.C. § 3301 because they are "so marginally related to . . . the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit [this] suit." *Patchak*, 132 S. Ct. at 2210 (first quoting *Camp*, 397 U.S. at 150; then quoting *Clarke*, 479 U.S. 399). As a result, Plaintiffs have not "adequately pled a claim" under that statute, *Chabad Lubavitch,* 768 F.3d at 201, and their § 3301 claim is therefore dismissed.

In their opposition brief, Plaintiffs also make "prudential standing" arguments with respect to Executive Order 11988 and 40 U.S.C. § 3307. Opp. Br. at 10-11. Plaintiffs reference Executive Order 11988 in a single sentence in the fact section of their Complaint, Comp. ¶ 83, but do not invoke the violation of Executive Order 11988 as a basis for any cause of action or

15

relief. *See id.* ¶¶ 89-108; *id* at 14. The same is true of Plaintiffs' vague reference to 40 U.S.C. § 3307, which does not even name the statute but instead merely notes that "congressional review . . . is . . . required for leases of this size." Comp. ¶ 83. "[I]t is axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss." *Muniz v. Morillo*, No. 06-CV-6570 (RJS), 2008 WL 4219073, at *6 (S.D.N.Y. Sept. 10, 2008) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989)). The Court also notes that its December 9, 2015 order, issued after the GSA filed its motion to dismiss, offered Plaintiffs an opportunity to amend their pleadings and put them "on notice that declining to amend their pleadings to timely respond to a fully briefed argument in the . . . motion to dismiss may well constitute waiver of the Plaintiffs' right to use the amendment process to cure any defects that have been made apparent by the [GSA's] briefing." Dkt. No. 12. Plaintiffs declined to amend their complaint and instead filed their opposition to the GSA's motion to dismiss. Dkt. No. 16. Because Plaintiff had ample opportunity to amend its complaint to add these claims but did not do so, the Court will not consider Plaintiffs' Executive Order 11988 and 40 U.S.C. § 3307 claims.

V. **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is granted. The Clerk of Court is directed to close the case. This resolves Dkt. No. 9.

SO ORDERED.

Dated: June 21, 2016
New York, New York

ALISON J. NATHAN
United States District Judge